UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DELVON BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 3:24-cv-00572-GCS |
| | ) |
| **CHARLES RAYFORD, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Pending before the Court is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies by Defendants Curtis Dallas ("Dallas"), Charles Rayford ("Rayford"), Brendan Garcia ("Garcia"), and Geddy McDonald (collectively, "Defendants"). (Doc. 54). Plaintiff Delvon Brown ("Brown") filed a Response and Supplement on October 23, 2024. (Doc. 61, 62). Defendants filed a reply on November 27, 2024. (Doc. 65). A hearing was held on Defendants' motion on April 22, 2025, wherein the Court heard testimony and arguments. (Doc. 84). The Court took the matter under advisement. *Id.* For the reasons delineated below, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 54).

PROCEDURAL BACKGROUND

Brown, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights at Menard Correctional Center ("Menard"). (Doc. 1). Brown filed his Complaint on

February 28, 2024. (Doc. 1). Brown alleged that, after an encounter with several correctional officers, he suffered serious injuries. *Id.* at 3.

The Court completed a preliminary review of Brown's Initial Complaint pursuant to 28 U.S.C. § 1915A on April 22, 2025. (Doc. 11, p. 1, 8). The Court allowed Brown to proceed on the following counts:

> **Count 1:** Eighth Amendment excessive force or failure to intervene/protect claim against Defendants Rayford, Dallas, and Hughes.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant Garcia for denying Plaintiff medical attention for his broken teeth or dizziness.

(Doc. 11, p. 8).

## FACTUAL BACKGROUND

In his response to the pending Motion, Plaintiff Brown discusses the exhaustion of administrative remedies only in relation to Grievance No. K04-1023-0657. (Doc. 61, p 7). Defendants, in their reply, did the same. (Doc. 65, p. 6-7). The Court will thus focus its analysis of exhaustion of administrative remedies on this grievance.

1.  *Grievance No. K04-1023-0657 (Submitted on October 6, 2023)*

On October 6, 2023, Brown submitted Grievance No. K04-1023-0657 related to the incident on September 28, 2023. (Doc. 85, p. 6). Brown alleged that Correctional Officer Rayford told Brown to turn around and stand up. *Id.* Brown recalls that Rayford was with other prison officials, who he later alleges were Dallas, Garcia, and Geddy McDonald.[1]

---

[1] Initially, Brown alleged that "Hughes" was a defendant. (Doc. 1, p. 2). However, Brown later substituted McDonald for Hughes. (Doc. 39).

(Doc. 85, p. 6; Doc. 39). According to Brown, the men slammed Brown against a wall for disobeying an order to turn around and stand. (Doc. 85-2, p. 6-7). The men allegedly grabbed Brown's hair and slammed him against a wall again. *Id.* at 7. During the altercation, Brown claims that he spat out a tooth. *Id.* Brown reported dizziness, headaches, swollen gums, and half a leftover tooth that perpetuates his gum problems. *Id.* Brown also alleges that the prison provided no medical care. *Id.* Brown claims that he was kept in a cell in the cold with no sheets, and the nurses did not treat his gums. *Id.* Brown marked the grievance as an emergency, so it was expedited to the Grievance Officer for a Second Level review on October 16, 2023. *Id.* at 6. No further action was taken until the Grievance Officer requested an extension on December 27, 2023. *Id.* at 9. The Chief Administrative Officer ("CAO") granted the extension on February 2, 2024. Eventually, after Brown had initiated this action, the Nursing Supervisor wrote a memorandum stating that Brown's grievance had been addressed. *Id.* at 8. Following that report, on August 1, 2024, another Grievance Officer recommended denial of the grievance, citing the memorandum. *Id.* at 4. The CAO concurred with the Grievance Officer's recommendation. *Id.*

### LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. Proc. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine

issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the

factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details

regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the Administrative Review Board ("ARB") within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendants argue that Brown failed to exhaust his administrative remedies as required by the PLRA. (Doc. 65, p. 6-9). Brown counters that the grievance procedure was unavailable to him. (Doc. 61, p. 7). Specifically, Brown alleges that the grievance

procedure both took too long and that prison officials interfered with the grievance process. *Id.* at 7-8.

A plaintiff cannot sue first and exhaust later. That is precisely what Brown did here. As noted above, Brown submitted grievance #K04-1023-0657 on October 6, 2023. On October 16, 2023, the Grievance Officer received Brown's grievance for review, and on March 7, 2024, the Nursing Supervisor wrote a memorandum recommending denial. The Grievance Officer then also recommended the denial on August 1, 2024, and the CAO concurred on the same day. Brown filed suit on February 28, 2024, less than five months after he filed this grievance and just over a week before his grievance was addressed. This five-month time frame does not appear to be adequate to allow a facility to process/address any grievance thoroughly. Additionally, there is no evidence that *at the time of the filing of the lawsuit* (February 28, 2024), the facility was ignoring Plaintiff's claims or grievances. In fact, the record shows that other grievances filed by Plaintiff were answered accordingly. (Doc. 85, p. 12).

Next, Brown contends that Menard hindered the grievance process by failing to respond to his grievance. (Doc. 61, p. 7, 8). The Court rejects this contention. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). *See also Matthews v. Pitzen*, No. 24-1358, 2024 WL 4850498, at *2 (7th Cir. Nov. 21, 2024) (noting that "processing delays do not relieve a prisoner of the obligation to exhaust.") (citing *Ross v. Blake*, 578 U.S. 632, 638-639 (2016)).

As noted above, Brown did not give the grievance process enough time to play out before he filed this suit.

As to Brown's argument that prison workers interfered with the grievance process, the Court finds this argument unpersuasive. First, the record clearly indicates that Brown was aware of the grievance procedures at Menard. The record also reflects that Brown successfully and correctly used the grievance procedures multiple times in the past. (Doc. 85, p. 12). Brown likewise understood such steps when he filed his grievances with the prison and when he filed his complaint. (Doc. 61, p. 4). And, crucially, the grievance at issue here was processed and addressed by prison officials, albeit not as quickly as Brown would have liked.

Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies.").

## Conclusion

For the reasons outlined above, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 54). The Court **DISMISSES without prejudice** Plaintiff's complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

**DATED: September 19, 2025.**

Digitally signed by
Judge Sison
Date: 2025.09.19
10:22:23 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**